IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

State of Georgia, *et al.*,
   *Plaintiffs,*

v.

Andrew Wheeler, *et al.*,
   *Defendants.*

Case No. 2:15-cv-79-LGW-RSB

**POST-HEARING BRIEF IN SUPPORT OF PLAINTIFF STATES' MOTION FOR SUMMARY JUDGMENT**

  The Plaintiff States submit this brief in response to this Court's invitation to address issues that arose during the December 14 hearing. This brief addresses two points related to the States' contention that the Agencies violated the APA by failing to provide proper notice of the 2015 WOTUS Rule's distance-based limitations for adjacent and case-by-case waters. For their remaining contentions, the States rely on their prior briefing and their presentation at the December 14 hearing.

  **A. The proposed rule failed to provide sufficient notice of the final rule's distance-based limitations in two related ways.**

  During the hearing, the Court correctly identified one clear basis for concluding that the final rule is not a logical outgrowth of the proposed rule: the proposed rule failed to provide "any range of distance[s]" the Agencies were considering as potential limits on the definitions of "neighboring" waters and case-by-case waters. Hr'g Tr. at 51–52. The rule thus failed to fulfill the Agencies' obligation to "'describe [in the proposed rule] the range of alternatives being considered with reasonable specificity.'" *Horsehead Res. Dev. Co. v. Browner*, 16 F.3d 1246, 1268 (D.C. Cir. 1994) (quoting *Small Refiner Lead Phase-Down Task Force v. U.S. E.P.A.*, 705 F.2d 506, 549 (D.C. Cir. 1983)). The APA imposes this "demanding" obligation to ensure that interested parties can test the rule through targeted comments with the rigor necessary to ensure informed agency decisions. *Id.* Without notice specific enough to apprise interested parties of what potential alternatives the agency may be considering, those parties are left to "'divine the

1

agency's unspoken thoughts'" to determine what issues they need to address, and generally will not be able to provide the targeted comments the agency needs to make an informed decision. *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1080 (D.C. Cir. 2009) (quoting *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259–60 (D.C. Cir. 2005)). The proposed rule here left interested parties in just that predicament by failing to identify *any* range of distances under consideration as limits on neighboring and case-by-case waters. *See* ECF No. 203 (States' Mot. for Summary Judgment) at 20–22; ECF No. 222 (States' Reply) at 15–17, 20–21.

The comments responding to the proposed rule here bear out that problem. The defendants pointed out various limited comments generally advocating for or opposing using distance-based limits in the rule, and even a few that mention specific distances. Agencies' Br. at 26–27. But none of these comments offer the kind of rigorous or targeted analysis of the specific distance-based limits set out in the final rule—whether via maps, surveys, or other kinds of data—that a proposal of specific distances or a potential range of distances would have prompted. *Cf. Horsehead Res. Dev. Co.*, 16 F.3d at 1268 ("It is the possibility of meaningful participation that is lacking here, for while the EPA proposed individual elements of the Tier III standard separately, the component parts were never collected together in such a fashion as to enable the parties to anticipate and adequately comment on the ultimate Tier III standard."). And how could they? Interested parties, whether states or private parties, do not have unlimited resources. Without notice that the Agencies were contemplating a range of particular distance-based limits, those parties could not have been expected to devote the substantial resources necessary to review an unlimited range of distances based on nothing more than a hunch that the Agencies might adopt a certain kind or set of limits. Nor was it their burden to do so. The APA makes it the agency's job to direct interested parties to the alternatives they need tested via public comment. The Court correctly highlighted the Agencies' failure to do so here, *see* Hr'g Tr. at 51–52; by failing to identify the range of distance-based limits they were considering for

neighboring and case-by-case waters, the Agencies failed to give notice sufficient to support the limits they adopted in the final rule.

It is worth emphasizing here, however, that the proposed rule was defective at an even more fundamental level. The rule did not just fail to notify interested parties of the range of distance-based limitations under consideration. The rule also failed, with one minor exception, even to let interested parties know that the Agencies were considering a shift to distance-based limitations on those waters *at all*.

Take "neighboring" waters. The proposed rule defined those waters—a subset of "adjacent" waters deemed categorically jurisdictional—based solely on functional or ecological considerations: Neighboring waters were those within the "riparian area" or "floodplain" of a primary water, impoundment, or tributary, or waters "with a shallow subsurface hydrologic connection or confined surface hydrologic connection to such a jurisdictional water." Definition of "Waters of the United States" Under the Clean Water Act, 79 Fed. Reg. 22,188, 22,263 (Apr. 21, 2014) (Proposed Rule). None of these three identified limits on neighboring waters included any kind of numeric, distance-based component. *Id.* More important, the proposed rule offered not the slightest hint that the Agencies were considering building in numeric distance-based limitations for "riparian areas" or "floodplains." To even the most careful and interested reader, the Agencies appeared to have settled on those functional limits, not fixed distances, "to define the lateral reach of the term 'neighboring.'" 79 Fed. Reg. at 22,207.

As the defendants pointed out, the proposed rule did include several requests for comments on whether the Agencies should establish "specific geographic limits" or "distance limitations." These requests do not save the rule from a notice-and-comment violation. In addition to failing to identify any range of potential distance-based limitations with reasonable specificity, *see Horsehead Res. Dev. Co.*, 16 F.3d at 1268; *Small Refiner*, 705 F.2d at 549, these mentions of distance-related terms failed to provide notice of the fundamental shift to a distance-based regime because, *without exception*, the Agencies expressly cabined these requests to only the third "hydrologic connections" subcategory of neighboring waters. That is, the Agencies

3

sought comment on potential "geographic limits" only as to waters *outside* the "floodplains" or "riparian areas" that the proposed rule had defined seemingly conclusively without distance-based limitations. *See* 79 Fed. Reg. 22,207–08 ("While the agencies' best professional judgment has always been a factor in determining whether a particular wetland is 'adjacent' under the existing definition, the agencies recognize that this may result in some uncertainty as to whether a particular *water connected through confined surface or shallow subsurface hydrology* is an 'adjacent' water. The agencies therefore request comment on whether there are other reasonable options for providing clarity for jurisdiction *over waters with these types of connections*." (emphasis added)); *id.* at 22,208 ("Options could include establishing specific geographic limits *for using shallow subsurface or confined surface hydrological connections* as a basis for determining adjacency, including, for example, distance limitations based on ratios compared to the bank-to-bank width of the water to which the water is adjacent." (emphasis added)); *id.* at 22,209 ("The agencies seek comment on specific options for establishing additional precision in the definition of "neighboring" through: explicit language in the definition that *waters connected by shallow subsurface hydrologic or confined surface hydrologic connections* to an (a)(1) through (a)(5) water must be geographically proximate to the adjacent water; circumstances under which waters *outside the floodplain or riparian zone* are jurisdictional if they are reasonably proximate; support for or against placing geographic limits on what waters *outside the floodplain or riparian zone* are jurisdictional…." (emphasis added)). Such narrowly tailored requests did not put interested parties on notice that the final rule would put the *entire category* of "neighboring" waters—not just the subset of waters connected by certain hydrologic connections—under a distance-based scheme. "If the APA's notice requirements mean anything, they require that a reasonable commenter must be able to trust an agency's representations about *which particular* aspects of its proposal are open for consideration." *Envtl. Integrity Project v. E.P.A.*, 425 F.3d 992, 998 (D.C. Cir. 2005) (citing *Fertilizer Inst. v. EPA,* 935 F.2d 1303, 1312 (D.C.Cir.1991) (emphasis in original)). If anything, by expressly limiting their call for comments on distance-based options to the narrow context of waters connected by certain hydrologic

connections, the Agencies confirmed that they were *not* considering or interested in distance-based limitations for the rest of the proposed "neighboring waters," which they defined using functional terms alone.

This fundamental notice defect is even more stark for case-by-case waters. The proposed rule offered no limitation at all on which waters would be eligible for consideration on a case-by-case basis; the rule included in that category all "other waters, including wetlands" if they had a significant nexus to a primary water. 79 Fed. Reg. at 22,263. And the proposed rule offered no indication at all that the Agencies were considering imposing anything like the final rule's specific distance-based or floodplain-based limitations for case-by-case waters, *see* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054, 37,105 (Jun. 29, 2015). The Agencies can point only to the phrase "sufficiently close," which the proposed rule used a few times in explaining the case-by-case category. But the proposed rule used that phrase only to describe how the Agencies planned to decide whether particular "other waters" were "similarly situated" to waters in the same region and thus could be aggregated for purposes of determining if the waters had a significant nexus. 79 Fed. Reg. at 22,211 ("For purposes of analyzing whether an 'other water' has a significant nexus, the agencies are proposing that 'other waters' are similarly situated if they perform similar functions and they are either (1) located *sufficiently close together so that they can be evaluated as a single landscape unit* with regard to their effect on the chemical, physical, or biological integrity of a water identified in paragraphs (a)(1) through (a)(3), or (2) located *sufficiently close* to a "water of the United States" for such an evaluation of their effect." (emphasis added)); *id.* at 22,213 ("The proposed regulation in the definition of "significant nexus" at (c)(7) clarifies that other waters, including wetlands, are similarly situated when they perform similar functions and are located *sufficiently close together* or *sufficiently close* to a `water of the United States' *so that they can be evaluated as a single landscape unit*." (emphasis added)); *id.* ("Similarly situated waters may be identified as *sufficiently close together* for purposes of this paragraph of the proposed regulation when they are within a contiguous area of land with relatively homogeneous soils, vegetation and landform

5

(e.g., plain, mountain, valley, etc.)." (emphasis added)). Put simply, this phrase had nothing at all to do with setting distance-based limitations on the category of case-by-case waters. And indeed, although the proposed rule asked specifically for public comment on "alternative approaches" for determining the jurisdictional status of "other waters," not one of those alternatives included or indicated interest in any kind of distance-based or even floodplain-based limitation, *see* 79 Fed. Reg. at 22,215.

The point is that the proposed rule failed to provide adequate notice on two related levels. It failed to identify a range of potential distance-based limitations the Agencies were considering for "neighboring" and case-by-case waters, as the Court noted at the hearing. And the proposed rule failed at a basic level to provide notice that the Agencies were considering a shift to a fundamentally different regime for defining these waters—from an approach centered around functional or descriptive limits for neighboring waters ("riparian areas," "floodplains") and *no* limits for case-by-case waters, to a scheme built around numeric, distance-based limitations. Together, these failings prevented interested parties from playing the critical role in the rule making process that the APA contemplates, and they require vacatur of the rule. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("[D]eficient notice is a 'fundamental flaw' that almost always requires vacatur." (quoting *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C.Cir.2009)).

      B.    *Alabama Power* **does not support the Agencies' position on logical outgrowth.**

The Agencies contended at the hearing that *Alabama Power v. OSHA*, 89 F.3d 740 (11th Cir. 1996), supports their position that the final rule's distance-based limitations were a logical outgrowth of the final rule. Hr'g Tr. 54–55. It does not.

The Agencies described *Alabama Power* as a case that is "on all fours" with this one, *id.*, apparently on the view that the case shows that OSHA was able to establish a specific numeric criterion—a fabric weight—in a final standard without previewing it in the draft standard, ECF No. 219 (Agencies' Resp.) at 27–28. That is not a plausible reading of *Alabama Power*.

In that case, OSHA had proposed as part of a standard for regulating electric utilities a "prohibition of any clothing fabrics that would substantially increase the severity of an employee's injury from arcing electrical equipment." *Ala. Power*, 89 F.3d at 743. OSHA then issued a final standard along the same lines. *See id.* (quoting final standard providing that "[t]he employer shall ensure that each employee who is exposed to the hazards of flames or electric arcs does not wear clothing that, when exposed to flames or electric arcs, could increase the extent of injury that would be sustained by the employee"). And in the preamble to the final standard, OSHA indicated that natural fabrics like cotton and wool were acceptable. *Id.* But that seemingly blanket permission to use natural fabrics was a mistake: OSHA had based the apparel provision "predominantly" on a power company's videotape that had reported on tests performed on various clothing materials, and that video had shown that under very specific conditions—"an 3800-ampere, approximately 12-inch arc which was 12 inches from the fabric and lasted for 10 cycles"—that cotton fabrics "of less than 11 ounces" would not meet the final standard. *Id.* at 744 n.3. So to conform its preamble to the video evidence, OSHA issued a "correction" explaining that "[n]atural fabrics, such as 100 percent cotton or wool, are acceptable under the final rule, provided they are of such weight and construction as not to ignite under the conditions to which an employee might be exposed." *Id.* at 743. Then, in a parenthetical, OSHA explained: "(For example, cotton fabrics of 11 ounces or [more] generally will not ignite when exposed to an arc the energy of which is approximated by a 3800-ampere, 12-inch arc lasting for 10 cycles….)." *Id.* at 743. OSHA maintained, however, that "the employer has discretion to determine whether or not 100 percent cotton or wool clothing is acceptable under the conditions to which a worker could be exposed." *Id.* at 745.

Thus, *Alabama Power* does not come close to the kind of drastic shift from proposal to final rule that occurred with the 2015 WOTUS Rule. In *Alabama Power*, both before and after the "correction," the standard required fabrics appropriate for the flame and electric arc conditions to which an employee could be exposed. The correction merely added one "example" of a nonconforming fabric, derived from the video evidence on which the standard was based,

7

which happened to include a numeric weight in it. *Id.* at 743. The Eleventh Circuit thus concluded that "commenting on certain weights of natural fabric … and clarification that under certain conditions, heavyweight natural fabrics are necessary" for full protection did not require further notice and comment. *Id.* at 745. By contrast, the final WOTUS Rule added specific and categorical distance-based limitations that were entirely new and fundamentally different from the proposed rule's purely functional approach (e.g., "riparian areas," "floodplains," waters with "confined surface" or "shallow subsurface" hydrological connection). And the final rule included those new limits as part of the to-be-codified WOTUS definition itself, not as a parenthetical example demonstrating how to apply the standard. *Alabama Power* does not support making such a fundamental shift from proposed to final rule without notice.

## CONCLUSION

For the reasons above and those set out in the Plaintiff States' prior briefing, this Court should promptly grant their motion for summary judgment and vacate the 2015 WOTUS Rule.

Respectfully submitted.

/s/ *Andrew A. Pinson*
Christopher M. Carr
  *Attorney General*
Andrew A. Pinson
  *Solicitor General*
    *Lead Counsel*
Office of the Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334
apinson@law.ga.gov
(404) 651-9453

*Counsel for Plaintiff State of Georgia*

Patrick Morrisey
  *Attorney General*
Lindsay S. See
  *Solicitor General*
Office of the Attorney General
State Capitol , Building 1, Rm 26-E
Charleston, West Virginia 25305
lindsay.s.see@wvago.gov
(304) 558-2021

*Counsel for Plaintiff State of West Virginia*
(admitted *pro hac vice*)

Steve Marshall
   *Attorney General*
Andrew Brasher
   *Solicitor General*
Office of the Attorney General
501 Washington Ave.
Montgomery, Alabama 36130
abrasher@ago.state.al.us
(334) 353-2609

*Counsel for Plaintiff State of Alabama*
(admitted *pro hac vice*)

Curtis T. Hill, Jr.
   *Attorney General*
Thomas M. Fisher
   *Solicitor General*
Office of the Attorney General
302 West Washington Street
Indiana Government Center - South, 5th Fl.
Indianapolis, Indiana 46204
tom.fisher@atg.in.gov
 (317) 232-6255

*Counsel for Plaintiff State of Indiana*
(admitted *pro hac vice*)

Joshua H. Stein
 *Attorney General*
Asher P. Spiller
 *Assistant Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
aspiller@ncdoj.gov
(919) 716-6977

*Counsel for Plaintiff N.C. Department of Environmental Quality*
(admitted *pro hac vice*)

Pamela Jo Bondi
   *Attorney General*
Jonathan Glogau
   *Attorney for the State of Florida*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
jon.glogau@myfloridalegal.com
(850) 414-3300

*Counsel for Plaintiff State of Florida*
(admitted *pro hac vice*)

Derek Schmidt
   *Attorney General*
Jeffrey A. Chanay
   *Chief Deputy Attorney General*
Office of the Attorney General
120 SW 10th Ave., 3d Floor
Topeka, Kansas 66612
jeff.chanay@ag.ks.gov
 (785) 368-8435

*Counsel for Plaintiff State of Kansas*
(admitted *pro hac vice*)

Alan Wilson
   *Attorney General*
Robert D. Cook
   *Solicitor General*
James Emory Smith, Jr.
   *Deputy Solicitor General*
Office of the Attorney General
1000 Assembly Street, Room 519
Columbia, South Carolina 29201
esmith@scag.gov
(803) 734-3680

*Counsel for Plaintiff State of South Carolina*
(admitted *pro hac vice*)

<div style="display:grid;grid-template-columns:1fr 1fr;">

Andy Beshear
  *Attorney General*

Sam Flynn
  *Assistant Attorney General*

Office of the Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601
samuel.flynn@ag.ky.gov
(502) 696-5650

*Counsel for Plaintiff State of Kentucky*
(admitted *pro hac vice*)

Sean D. Reyes
  *Attorney General*

Tyler Green
  *Solicitor General*

Office of the Attorney General
Utah State Capitol Complex
350 North State Street, Suite 230
Salt Lake City, Utah 84114-2320
tylergreen@agutah.gov
(801) 538-9600

*Counsel for Plaintiff State of Utah*
*(*admitted *pro hac vice*)

</div>

Brad D. Schimel
  *Attorney General*

Misha Tseytlin
  *Solicitor General*

Wisconsin Department of Justice
17 West Main Street
Madison, Wisconsin 53703
tseytlinm@doj.state.wi.us
(608) 267-9323

*Counsel for Plaintiff State of Wisconsin*
(admitted *pro hac vice*)

## CERTIFICATE OF SERVICE

      I hereby certify that on December 24, 2018, I served this motion by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

                                                /s/ *Andrew A. Pinson*
                                                Andrew A. Pinson